### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

WUELLNER OIL & GAS, INC., ET AL                    CIVIL ACTION NO. 10-cv-01686

VERSUS                                             JUDGE ELIZABETH ERNY FOOTE

ENCANA OIL & GAS (USA) INC.,
MARSHALL OIL & GAS, INC.,
TEXAS GAS DEVELOPMENT, L.P.,
And JARRATT ENTERPRISES, L.L.C.                    MAGISTRATE JUDGE MARK HORNSBY

### MEMORANDUM OPINION

Plaintiffs, Wuellner Oil & Gas, Inc.,  Marshall Oil & Gas, Inc., Texas Gas

Development, L.P., and Jarratt Enterprises L.L.C. (collectively "Plaintiffs"), claim that

Defendant EnCana Oil & Gas (USA) Inc.'s ("EnCana") breached obligations owed to

them by failing to allow Plaintiffs to participate in leases taken by Encana within two

geographic prospects.  Before the Court are EnCana's Motion for Partial Dismissal

[Record Document 21]; Plaintiffs' Motion for Leave to File First Supplemental and

Amended Petition [Record Document 23]; and EnCana's Motion To Strike [Record

Document 32].  Oral argument was held on these motions on December 5, 2011 at

9:30 a.m. in open court.  For the reasons stated herein, the Court: 1) **GRANTS in part**

**and DENIES in part** Plaintiffs' Motion for Leave to File First Supplemental and

Amended Petition [Record Document 23]; 2) **GRANTS** EnCana's Motion for Partial

Dismissal [Record Document 21]; and 3) **DENIES** EnCana's Motion to Strike [Record Document 32];

## I.   Factual and Procedural Background

Plaintiffs assert two claims in this suit.  First, Plaintiffs seek an accounting, damages, and payment of overriding mineral royalty interests from Defendant EnCana as the assignee of certain mineral leases on land located within defined geographical prospect areas. As to these leases, Plaintiffs' rights derive from written contracts granting the mineral interests.  Second, Plaintiffs seek to extend their rights against Defendant Encana to include the right to participate in ANY and ALL leases taken by or assigned to Defendant within the defined prospect areas.  As to this second set of leases, Plaintiffs allege that their rights derive from certain Letter Agreements entered into between Plaintiffs' predecessor-in-interest and Will-Drill Resources, Inc. ("Will-Drill") which Letter Agreements obligate Will-Drill to assign to Plaintiffs a royalty interest in any lease that it may obtain within the prospect areas.  Thus, Plaintiffs seek to impose on Defendant the personal obligation of Will-Drill. It is this second claim which is the subject of Defendant's Motion for Partial Dismissal.  In order to resolve Defendant's Motion for Partial Dismissal, the Court is called upon to analyze the contracts in question.  Thus, a detailed review of the undisputed factual background and the contracts themselves provides a necessary backdrop to the Court's opinion.

Marshall-Wuellner, Inc. (predecessor-in-interest to the current Plaintiffs) and Will-Drill entered into two Letter Agreements in November 2003.  [Record Document 1-

2, pp. 8-12, 13-17].[1]  These Letter Agreements governed the manner in which the two companies would explore and develop two prospect areas.[2]  At oral argument, Counsel for Plaintiffs explained that these two prospects were the "brainchild" of Marshall-Wuellner and Will-Drill, implying that these two companies performed the work that was necessary in order to determine that these geographical areas had potential for mineral production.

Under the Letter Agreements, Will-Drill was solely responsible for acquiring "oil, gas and mineral interests within the Contract Area." Id. at 8-9.  The Letter Agreements provided that Marshall-Wuellner "shall receive an assignment of overriding royalty from Will-Drill... on any lease acquired by Will-Drill within the Contract Area." Id.  The Letter Agreements further specify the manner by which Marshall-Wuellner would receive the royalty interest to which they were entitled: "Will-Drill will execute and deliver to M-W the aforementioned assignment within ninety (90) days of M-W's written request therefore." Id.  Finally, clause nine of the Letter Agreements provides that the prospects will constitute an "Area of Mutual Interest between the parties hereto." Id. at 11.  Clause Nine lays out a scheme that effectively gives each party an option to purchase "its share of the acquired interest" if the other party acquires an interest

---

[1] The First Letter Agreement is dated November 1, 2003.  [Record Document 1-2, p.8].  The second is dated November 25, 2003.  Id. at 13.  The terms of the Letter Agreements are identical.  In the interest of brevity, future discussion of the provisions of the Letter Agreements will only cite to the November 1, 2003 Letter Agreement.

[2] A prospect area is a geographic area considered by geologists to have potential to produce oil and gas.  Kincade v. Midroc Oil Co., 769 So.2d 813, 813 (La. Ct. App. 2000).

within the prospect.  It creates a series of deadlines for the party acquiring the interest

to notify the other party and then for the other party to decide whether to exercise its

option to purchase its share of that interest.  Id.  In summary, the provisions of the

Letter Agreements lay out how Marshall-Wuellner and Will-Drill would share in the

duties and benefits involved in transforming the two prospects into producing oil fields.

Acting in conformity with its obligations under the Letter Agreements, Will-Drill

acquired certain leases within the two prospect areas and assigned overriding royalty

interests ("ORRIs") in those leases to Marshall-Wuellner on August 22, 2005.  [Record

Document 1-2, pp. 18-23, 24-44].  Then, on August 25, 2005, Will-Drill assigned

certain leases within the two prospect areas to Pride Oil ("Pride").[3]  [Record Document

1-2, p.28].  As is discussed in greater detail below, Pride was acting on behalf of Encana

in receiving these assignments.

Paragraph Four of the Assignment reads in pertinent part:

Assignee [Pride] takes the Subject Properties subject to and agrees to faithfully
and timely perform the terms, conditions and provisions of the Leases and any
other contract burdening the same including specifically, but not limited to

a)    the certain Farmout Agreement dated September 1, 2004, by and
between Marathon Oil Company, as Farmor, and Will-Drill
Resources, Inc., as Farmee, and

b)    those certain Assignments of Overriding Royalty Interest from Will-
Drill Resources, Inc., as Assignor to Marshall-Wuellner, Inc., as
Assignee, executed on August 22, 2005…

Assignee assumes and agrees to pay, perform, fulfill and discharge all
claims, costs, expenses liabilities and obligations accruing or relating to the

_____

[3] Hereinafter, this assignment will be referred to as the "Assignment."

owning, developing, exploring, operating or maintaining of the Subject Properties after the Effective Date, including specifically, but without limitation, the obligation to legally plug and abandon any well listed on Exhibit A.

Id. at 29 (emphasis added).

As noted above, it is undisputed that when it entered into the Assignment of leases with Will-Drill, Pride was acting as an agent for Defendant EnCana, although at the time of the transaction Pride did not disclose the identity of its principal — making it a partially disclosed mandatary.  [Record Document 20, p.1; Record Document 31, p.12, Record Document 29, p.9].  On March 13, 2007, Pride assigned to EnCana the leases it had acquired from Will-Drill.  [Record Document 1-3, p.8].  Later in the year 2007, EnCana assigned a fifty-percent interest in many of the leases to SWEPI LP.  [Record Document 23-2, p.1].  Finally, on January 13, 2010, Marshall-Wuellner assigned to the Plaintiffs in this action the ORRIs it had acquired from Will-Drill on August 22, 2005. [Record Document 1-2, p.37].

Plaintiffs filed suit on October 1, 2010 in state court.  Defendants removed to this Court on November 5, 2010.  On March 3, 2011, Defendants moved to dismiss Plaintiffs' claims related to their right to participate in additional leases acquired by EnCana within the defined prospect areas.  On March 28, 2011, the deadline for joinder of parties and amendment of the pleadings, Plaintiffs moved for leave to amend their petition in order to add claims against Pride Oil and SWEPI LP.

The Court will address Defendant's Motion for Partial Dismissal first, as the resolution of the question of whether of Plaintiffs' "right to participate" claims against

EnCana state a cause of action upon which relief can be granted has consequences for the determination of whether Plaintiffs' motion to amend their complaint to add Pride Oil as a Defendant should be granted.

## II.    EnCana's Motion for Partial Dismissal [Record Document 21]

In its Motion for Partial Dismissal, EnCana argues that Plaintiffs' claim that EnCana assumed Will-Drill's obligations under the Letter Agreements, "vesting in them the right to demand from EnCana the Assignment of additional overriding royalty interests in every other lease EnCana owns in the defined prospect areas" fails to state a claim upon which relief may be granted.  [Record Document 21-2, p.9].  Defendant's argument progresses through two stages.  Defendant first argues that Plaintiffs' alleged right to participate in additional leases acquired by Defendant within the two prospects is a personal, as opposed to a real, right.  Next, Defendant argues that the language in the Assignment claimed by Plaintiffs to effectuate the alleged assumption of obligations, whereby Defendants "take the Subject properties subject to... any other contract burdening the same," is insufficient as a matter of law to create a stipulation pour autrui in favor of Plaintiffs.  [Record Document 1-2, p.29].  The Court is persuaded that Defendant has carried its burden with respect to both stages of its argument.

### A.    Standard for Motion to Dismiss under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of any claim that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In order to survive a Rule 12(b)(6) motion to dismiss, a "complaint must allege sufficient

factual matter, accepted as true, to state a claim that is plausible on its face." Hershey v. Energy Transfer Partners, L.P, 610 F.3d 239, 245 (5ᵗʰ Cir. 2010). While a complaint attacked by a Rule 12(b)(6) motion need not contain detailed factual allegations, it must at least allege plausible grounds from which one could infer that the elements of the claim can be made out. Bell Atlantic Co. v. Twombly, 550 U.S. 544, 556 (2007); In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). That is, the complaint must allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of [every element of the claim]." Bell Atlantic Co., 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). The Court must not, however, convert this "plausibility" requirement into an analysis of whether the non-moving party is likely to succeed on the merits. Bell Atlantic Co., 550 U.S. at 556 ("of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.") (citations omitted).

As this case is before the Court under diversity jurisdiction, the Court must apply the substantive law of the forum state. Bradley v. Allstate Ins. Co., 620 F.3d 509, 517 n.2 (5ᵗʰ Cir. 2010) (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)). The Fifth Circuit in In re Katrina Canal Breaches Litigation stated the appropriate methodology for a Federal Court sitting in diversity in Louisiana to apply:

> To determine Louisiana law, we look to the final decisions of the Louisiana Supreme Court. In the absence of a final decision by the Louisiana Supreme

Court, we must make an Erie guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case.  In making an Erie guess, we must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes.  Jurisprudence, even when it rises to the level of jurisprudence constante, is a secondary law source in Louisiana.  Thus, although we will not disregard the decisions of Louisiana's intermediate courts unless we are convinced that the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them.

495 F.3d 191, 206 (5th Cir. 2007) (citations and internal quotation marks omitted).

In Louisiana, the interpretation of a contract and the determination of whether the language in a written contract is ambiguous are questions of law.  Preston Law Firm, L.L.C. v. Mariner Health Care Mgmt. Co., 622 F.3d 384, 391-92 (5th Cir. 2010).  Once a written document is found to be ambiguous, however, "the determination of the parties' intent through extrinsic evidence is a question of fact."  Prescott v. Northlake Christian Sch., 369 F.3d 491, 495 (5th Cir. 2004).

### B.   Real Obligations and Personal Obligations

The underlying mineral rights at issue in this matter are real rights.  La. Rev. Stat. Ann. § 31:16 (2010) ("Mineral rights are real rights...").  Obligations correlative and incidental to real rights are "real obligations", and they pass automatically to the successor to the real right to which they are correlative.  La. Civ. Code Ann. art. 1763-64 (2010).  That is to say, a person who comes to own a real right to which a real obligation is attached is bound by that obligation merely by virtue of owning the real right.  Personal obligations that relate to a real right, however, do not run with that real right.  La. Civ. Code Ann. art. 1764 (2010).  In order to be bound by personal

obligations related to a real right, the subsequent owner of a real right must "assume the personal obligations of his transferor with respect to the thing."  Id.

Plaintiffs appear to concede that the obligation to allow Marshall-Wuellner to participate in additional leases acquired within the prospects is a personal obligation. [Record Document 25, p.8].  In any case, the Court is persuaded that these unrecorded Letter Agreements created only personal obligations between Marshall-Wuellner and Will-Drill.  Kincade v. Midroc Oil Co., 769 So.2d 813, 817 (La. Ct. App. 2000) (holding that letter agreements entitling a geologist to "one-third of any cash profit and one-third of any interest [the other party has] in the oil and gas leases within the area of interest" created only personal obligations).  The Letter Agreements do not effectuate the assignment of any real rights, rather they only contemplate the assignment of real rights that Will-Drill is obligated to obtain in the future.  [Record Document 1-2, p.8-9]. The fact that the Letter Agreements do not reference any real rights that Will-Drill already owns confirms that it creates no real obligations, since a real obligation must be "correlative and incidental to a real right" and "[i]t is a fundamental principle that no one can transfer a greater right than he himself has." La. Civ. Code Ann. art. 1763 (2010); Eagle Pipe and Supply, Inc. v. Amerada Hess Co., No. 2010-2267, 2011 WL 5865523 at *25 (La. 2011).  As a mere personal obligation relating to the leases at issue, the obligation to allow Plaintiffs to participate in additional leases acquired within the prospect area is not automatically assumed by subsequent owners of the leases.

La. Civ. Code Ann. art. 1978 (2010).  The only question before the Court is therefore whether these personal obligations were assumed by Defendants.

    **C.**   Stipulations Pour Autrui **and Assumptions of Obligations**

Article 1978 provides that "[a] contracting party may stipulate a benefit for a third person called a third party beneficiary."  La. Civ. Code Ann. art. 1978 (2010).  The case law makes clear that in assessing whether a stipulation pour autrui exists, Courts should consider three criteria: "whether 1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promissee."  Williams v. Certain Underwriters at Lloyd's of London, 398 Fed.Appx. 44 (5th Cir. 2010) (citing Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary, 939 So.2d 1206, 1212 (La. 2006); see also New Orleans Public Service, Inc. (NOPSI) v. United Gas Pipe Line Co., 732 F.2d 452, 467 (5th Cir. 1987).

The Louisiana Civil Code provides that "[a]n obligor and a third person may agree to an assumption by the latter of an obligation of the former."  La. Civ. Code Ann. art. 1821 (2010).[4]  If the obligee wishes to enforce the obligation against the third person, then the agreement to assume the obligation must have been made in writing.  Id.  An assumption by a third person of an obligation the other contracting party owes to an obligee may also be a stipulation pour autrui.  Whittington v. Louisiana-Pacific

_____

[4]The Articles governing assumption of obligations and stipulations pour autrui use the terms "third party" and "third person" to refer to different entities.  In this paragraph, the Court uses the term "third person" to refer to the party assuming the obligation.

Corp., 385 So.2d 863, 865 (La. Ct. App. 1980).  If the alleged assumption is also a

stipulation pour autrui, then in addition to the articles and jurisprudence governing

assumption of obligations the Court also consults the criteria used to determine whether

any stipulation pour autrui exists in order to determine whether the obligation in

question has been assumed.  See Davis Oil Co. v. TS, Inc., 145 F.3d 305, 310-313 (5th

Cir. 1998).

> **D.    Application of the Parol Evidence Rule to** Stipulations Pour Autrui
> **and Assumption of Obligations**

Plaintiffs argue, in effect, that since the referent of the words "other contracts

burdening the same" is unclear, parol evidence will be required in order to interpret the

contract in order to determine exactly what obligations were assumed by EnCana.

[Record Document 25, pp. 8, 10].  Plaintiffs argue that this ambiguity entitles them to

introduce evidence at trial that would "confirm that not only was Pride/EnCana aware of

the Letter Agreements, but they reviewed the Letter Agreements prior to the Will-

Drill/EnCana Assignment and they intentionally, knowingly and clearly evidenced their

intent to be bound by the Letter Agreements through the inclusion of the 'other

contract' language."  [Record Document 25, p.10].  Thus, Plaintiffs' argument is that

since the contract language is referentially ambiguous, it is impossible to interpret it

without parol evidence and therefore a motion to dismiss is inappropriate.  In order to

determine whether this case may be disposed of on a motion to dismiss, therefore, the

Court must determine whether the Contract is subject to interpretation from only its

four corners as a matter of law, or whether factual findings based on parol evidence are

required in order to determine the common intent of the parties.  <u>Investors Assocs. Ltd.</u> <u>v. B.F. Trappey's Sons Inc.</u>, 500 So.2d 909, 912 (La. Ct. App. 1987) ("Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law. The use of extrinsic evidence is proper only where the contract is ambiguous after an examination of the four corners of the agreement."); <u>Rodriguez v. Olin Co.</u>, 780 F.2d 491, 497 (5th Cir. 1985) ("Under Louisiana law, where uncertainty or ambiguity exist as to the provisions of a contract, or where the intent of the parties cannot be ascertained from the language employed, resolution of the ambiguity is a question of fact for the jury, and parol evidence regarding the parties' intent is admissible.") (citations omitted); <u>see also</u> <u>Commercial</u> <u>Life Ins. Co. v. Robinson</u>, 662 So.2d 486, 490 (La. Ct. App. 1995).

As a threshold matter, the Court must determine whether parol evidence is ever admissible to interpret a contract through which a third party assumes the obligations of the original obligor to an obligee.  Article 1821 provides that:

> An obligor and a third person may agree to an assumption by the latter of an obligation of the former. To be enforceable by the obligee against the third person, the agreement must be made in writing.[5]

La. Civ. Code Ann. art. 1821 (2010).

_____

[5] Although the Comments to Art. 1821 state that it "focuses on the relationship between stipulator and promisor when the beneficiary is a creditor of the former," implying that the article only applies when the original obligor owes the obligee money and that obligation is assumed by a third party, Louisiana courts have followed the plain meaning of the Article's language and applied it to cases where non-monetary obligations are allegedly assumed.  <u>See e.g. Horseshoe Entertainment v. Lepinski </u>923 So.2d 929, 934-35 (La. Ct. App. 2006) (noting that Article 1821 would apply to an alleged assumption of an agreement to arbitrate).

Article 1832 provides that:

> [w]hen the law requires a contract to be in written form, the contract may not be proved by testimony or by presumption, unless the written instrument has been destroyed, lost, or stolen.
>
> La. Civ. Code Ann. art. 1832 (2010).

Although the "contract may not be proved" language of Article 1832 could be read broadly to disallow the introduction of parol evidence to prove both the existence of a contract and the content of that contract's terms, the Court is persuaded that Louisiana courts routinely apply normal parol evidence principles to determine whether to admit parol evidence to interpret contracts that are required by law to be in writing.  Marsh Cattle Farms v. Vining, 707 So.2d 111, 116 (La. Ct. App. 1998) ("In interpreting deeds, the intention of the parties must be gathered from an inspection of the instrument itself, without the aid of extrinsic evidence, if the intentions can be thus ascertained. If the description is so ambiguous as to leave doubt as to the parties intent, the court may resort to extrinsic evidence as an aid in construction.") (citations omitted); Housing Authority of the City of Lafayette v. Fidelity & Deposit Co. of Maryland, 309 So.2d 920, 926 (La. Ct. App. 1975) (applying the "unambiguous" test to determine whether to admit parol evidence to aid in interpreting an Act of Sale).  Accordingly, the Court reads Article 1832 to only prohibit parol evidence offered to prove the existence of a contract required by law to be in writing.  Chevron U.S.A., Inc. v. Traillour Oil Co., 987 F.2d 1138, 1159 (5th Cir. 1993) (finding that because the agreements between the party allegedly assuming the obligation and the obligor were in writing, Article 1821 was

satisfied and only the interpretative question of whether the new obligor actually assumed the obligation remained).  Thus, the principles that govern the admissibility of parol evidence to interpret a written contract govern the interpretation of assumptions of obligations. In the instant case, Plaintiffs allege that Pride/Encana assumed Will-Drill's obligations in writing through the "other contracts burdening the same" language in the Assignment.  Accordingly, Articles 1821 and 1832 do not, in and of themselves, bar the admission of parol evidence to interpret this language.

The question then becomes whether the normal rules that govern admissibility of parol evidence to interpret a contract apply when the question of interpretation is whether the contract creates a stipulation pour autrui.  Addressing this issue, Plaintiffs cite a case from this district for the proposition that parol evidence is admissible to clarify an ambiguity in a contract purporting to create a stipulation pour autrui.  [Record Document 25, p.8.] (citing Marine Shale Processors, Inc. v. Weston Solutions, Inc., 2010 U.S. Dist. LEXIS 132211, *10-17, *23 (W.D. La. Nov. 16, 2010) (relying on Guidry v. Hedburg, 722 So.2d 1036, 1040 (La. Ct. App. 1998)), Reasons and Recommendations adopted 2010 U.S. Dist. Lexis 132258, *7 (W.D.La. Dec. 14, 2010).  Defendant makes two arguments regarding parol evidence, one more aggressive and one less aggressive.  Defendant's more aggressive argument is that the contracting parties must express "in their written agreement their 'manifest intent' that the assignee assume a personal obligation of his assignor by identifying that obligation with the requisite specificity."  [Record Document 33, pp. 9] (emphasis in original).  Defendant's

less aggressive argument is that given that ambiguity in a written contract is a condition precedent to the admissibility of parol evidence, "[p]arol evidence is not necessary or appropriate" in this case because the contract is not ambiguous.  Id. at 10.

Defendant's more aggressive approach would appear to never allow parol evidence to aid in the interpretation of a written contract alleged to create a stipulation pour autrui.  At first glance, this line of reasoning appears to be in keeping with the heightened jurisprudential requirement that the parties must "clearly manifest" their intention to create a stipulation pour autrui in order to render it enforceable.  If a contract is memorialized in writing and parol evidence would normally only be admissible to clarify an ambiguity in that writing, it would seem that by the fact that the writing was ambiguous the parties would have failed to satisfy the "manifestly clear" criteria for proving a stipulation pour autrui.  A number of cases appear to support Defendant's argument that the assumption of Will-Drill's obligations must be apparent on the face of the Assignment.  Pinnacle Operating Co. v. Ettco Enterprises, 914 So.2d 1144, 1149 (La. Ct. App. 2005) ("the intent to assume the obligation must be clearly expressed on the face of the documents."); SPE FO Holdings, LLC v. Retif Oil & Fuel, LLC, 2008 WL 3285907, at *5 (E.D. La.  Aug. 6, 2008) ("Such an assumption must be apparent on the face of the document.") (internal quotations omitted) (citing Chevron U.S.A., Inc. v. Traillour Oil Co., 987 F.2d 1138, 1159 (5th Cir. 1993) ("We decline to read into the investors' subleases an express assumption of Traillour's personal obligations to Chevron, where no such assumption is apparent from the face of the documents.")).

Still, the Court is not persuaded that Louisiana law departs from the normal rules governing the admissibility of parol evidence in interpretation of contracts when the question is whether the contract contains a stipulation pour autrui.  The two major Fifth Circuit cases addressing the standard for proving a stipulation pour autrui, Chevron v. Traillour and NOPSI v. United Gas Pipe Line, both hold that either an "express declaration or an extremely strong implication" is necessary to prove a stipulation pour autrui.  NOPSI, 732 F.2d at 467-68; Chevron U.S.A., Inc. v. Traillour Oil Co., 987 F.2d 1138, 1152 (5th Cir. 1993).[6]  The fact that an "extremely strong implication" may be sufficient to create a stipulation pour autrui shows that the stipulation need not be only found on the face of the document.  NOPSI, 732 F.2d at 468 (citing Allen & Curry Mfg. Co. v. Shreveport Waterworks Co., 113 La. 1091 (1905) for the proposition that "we do not agree entirely with the view of counsel for defendant that there cannot be a stipulation pour autrui in the absence of express words to that effect... the intention of the parties [control] in this respect and must be gathered from reading the contract, as a whole, in the light of the circumstances under which it was entered into.") (internal quotations omitted).  In Chevron the Fifth Circuit, finding no stipulation pour autrui in the written contracts at issue, made clear that language on the face of the documents interpreted was "unambiguous" and that "[w]ith respect to the investor's alleged stipulation to provide Chevron with replacement letters of credit, Chevron has simply

_____

[6] At the time these cases were decided, it was unclear whether a stipulation pour autrui was required to be in writing.  The Louisiana Supreme Court has subsequently clarified that stipulations pour autrui need not be in writing.  Joseph v. Hospital Service District No. 2 of Parish of St. Mary, 939 So.2d 1206, 1215 (La. 2006).

failed to raise a fact issue with regard to this requirement." 987 F.2d at 1138, 1148, 1152 n.10.  The Chevron court also found that the later-assignees of a mineral lease did not assume the personal obligations of the earlier assignees of the lease through language which stated that the later-assignees agreed to "assume all obligations and perform all duties resulting from the ownership of the Subject Interest covered hereby…" 987 F.2d at 1159.  The court interpreted this language as stating that the later-assignees only assumed the real obligations running with the lease and declined to "read into the investors' subleases an express assumption of [the earlier-assignee's] personal obligations to [the original assignor], where no such assumption is apparent from the face of the documents."  Id.  Far from categorically prohibiting the introduction of extrinsic evidence to clarify whether a written agreement created a stipulation pour autrui, the court in these cases found that because the written language unambiguously failed to create a stipulation pour autrui, factual findings regarding extrinsic evidence were unnecessary.

It must be remembered that sitting in diversity, this Court's task is to make an "Erie guess" as to what the state's highest court would most likely decide.  Herrmann Holdings Ltd. v. Lucent Techs. Inc., 302 F.3d 552, 558 (5th Cir. 2002).  The Louisiana Supreme Court has not decided whether Article 2046 applies when the question is whether the contract creates a stipulation pour autrui.  The Louisiana Supreme Court's most recent holding regarding the standard for proving a stipulation pour autrui does, however, shed some light on how it would likely decide the question before the Court.

In Joseph, the Louisiana Supreme Court held that, its earlier decisions and earlier

decisions of Louisiana Appellate Courts notwithstanding, there is no statutory or general

requirement that a stipulation pour autrui be in writing.  Joseph, 939 So.2d at 1215.[7]  In

departing from its earlier statement to the contrary in Fontenot v. Marquette Cas. Co.,

258 La. 671 (La. 1971), the Joseph court held that as a general matter a stipulation

pour autrui need not be in writing, however in the case before the court the parties to

the contract had agreed that the writing at issue "contains the entire understanding of

the parties..." Joseph, 939 So.2d at 1215.  The court gave effect to the merger clause

and finding the language of the writing unambiguous held that the writing failed to

satisfy the standard for creating a stipulation pour autrui.  Id. at 1213-16.[8]  In other

words, the Louisiana Supreme Court applied Article 2046's command that "[w]hen the

words of a contract are clear and explicit... no further interpretation may be made in

search of the parties' intent," and finding that the language of the writing did not clearly

create a stipulation pour autrui, the court ended its analysis.[9]

_____

[7] In the recently decided case of Eagle Pipe and Supply, Inc. v. Amerada Hess
Corp., the Louisiana Supreme Court cites  Joseph for the standard for finding a
stipulation pour autrui, adding that "we ultimately rely on the words of Article 1978 that
a contract must stipulate a benefit for a third person." No. 2010-2267, 2011 WL
5865523, *50 n.33 (La. October 25, 2011).  This approach confirms that contractual
interpretation in Louisiana relies ultimately on the relevant codal articles.

[8] The fact that the court enforced the merger clause against the third party to
the contract who was seeking to prove the existence of the stipulation pour autrui
further shows that the court was applying normal Louisiana parol evidence rules to
interpret the contract.

[9] Similarly, in the recent case of Williams v. Certain Underwriters at Lloyd's of
London, the Fifth Circuit found that the language in the written contract was

The same analysis is appropriate in this case.  The Court must first determine whether any ambiguity exists in the language of the written Assignment regarding whether EnCana assumed Will-Drill's obligations to allow Plaintiffs to participate in additional leases.  If ambiguity does exist, then parol evidence is necessary in order for the Court to determine the common intent of the parties on this question.  However, once it has been determined what evidence is admissible to interpret the terms of the contract, Plaintiffs have the heightened burden of showing that contract, as evidenced by the appropriate materials, "clearly manifests" the parties' intent to create a stipulation pour autrui.[10]  This parol evidence analysis follows the method of contractual interpretation set out by the applicable provisions of the Louisiana Civil Code.[11]

_____

unambiguous and that it failed to manifest a clear intention to benefit the third party. 398 Fed.Appx. 44, 48-49 (5th Cir. 2010).  The court therefore affirmed the district court's decision to grant defendant's 12(b)(1) motion to dismiss. Id. at 45, 49.

[10] This analysis leaves open the possibility that the language of a writing evidencing a contract may be ambiguous regarding whether it creates a stipulation pour autrui, but that one party may be able to prove through parol evidence that the parties nevertheless clearly manifested their intent to benefit a third person in the fully evidenced contract.

[11] Of course, then, this analysis also comports with the method outlined by the Fifth Circuit in In re Katrina Canal Breaches Litigation, whereby in making its Erie guess, Federal Courts applying Louisiana law must "employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes. Jurisprudence, even when it rises to the level of jurisprudence constante, is a secondary law source in Louisiana." 495 F.3d 191, 206 (5th Cir. 2007) (citations and internal quotation marks omitted).

### E.     Analysis

The Court finds the language of the Will-Drill/Pride Assignment unambiguous.

The words of the Will-Drill/Pride Assignment, when read as a whole, clearly and

explicitly show that EnCana/Pride did not intend to assume any of Will-Drill's personal

obligations relating to leases that were not transferred in the Assignment.  La Civ. Code

Ann. art. 2050 (2010) ("Each provision in a contract must be interpreted in light of the

other provisions so that each is given the meaning suggested by the contract as a

whole.").  The Assignment begins by defining the interests that are being assigned:

> Assignor... does hereby grant... unto Assignee all of Assignor's right, title, and interest in the oil, gas and mineral leases described on Exhibit A (the "Leases") and wells located thereon or on lands pooled, unitized or communitized therewith as also described on Exhibit A (the "Wells"). The Leases and Wells may be hereafter referred to as the "Subject Properties."  [Record Document 1-2, p.29].

Paragraph Four then addresses the obligations related to these "Subject Properties" that

Pride agrees to assume:

> Assignee [Pride] takes the Subject Properties subject to and agrees to faithfully and timely perform the terms, conditions and provisions of the Leases and any other contract burdening the same including specifically, but not limited to
>
> a)     the certain Farmout Agreement dated September 1, 2004, by and between Marathon Oil Company, as Farmor, and Will-Drill Resources, Inc., as Farmee, and
>
> b)     those certain Assignments of Overriding Royalty Interest from Will-Drill Resources, Inc., as Assignor to Marshall-Wuellner, Inc., as Assignee, executed on August 22, 2005...
>
> Assignee assumes and agrees to pay, perform, fulfill and discharge all claims, costs, expenses, liabilities and obligations accruing or relating to the owning, developing, exploring, operating or maintaining of the Subject Properties

after the Effective Date, including specifically, but without limitation, the obligation to legally plug and abandon any well listed on Exhibit A.

Id.

Plaintiffs focus on the following language from Paragraph Four: "Assignee takes the

Subject Properties subject to and agrees faithfully and timely perform the terms,

conditions and provisions of the Leases and any other contract burdening the same."

Id.; [Record Document 1-2, p.4].  Plaintiffs argue that since the Letter Agreements are

"other contract[s] burdening the [Leases or Subject Properties]," when Pride accepted

the leases assigned in the Will-Drill/Pride Assignment, they agreed to assume the

"terms, conditions and provisions" of the Letter Agreements.[12]  Pride is then obligated,

the argument goes, to allow Plaintiffs to participate in any future leases Pride acquires

within the prospect areas delineated by the Letter Agreements despite the fact that

these future leases are, by definition, not among the leases assigned in the Will-

Drill/Pride Assignment.  The final piece of Plaintiffs' argument is that Will-Drill's

obligation to allow Plaintiffs to participate in additional leases is a term, condition, or

provision of the Letter Agreements.

Even assuming, for the sake of argument, that Pride agreed to assume any of

the personal obligations of Will-Drill, Plaintiffs' argument lacks merit because the

---

[12]The Court's analysis of the contract assumes that the general noun "the same" in the sentence under scrutiny refers to either of two specific nouns: "Leases" or "Subject Properties". However, the Court notes that the rules of grammar require that in order to determine the reference for a general noun, you look to the specific noun which is the closest antecedent. In this case, that noun is "Leases." However, whether the general noun "the same" refers to "Leases" or to "Subject Properties" does not affect the outcome of the Court's analysis.

language of the contract clearly and explicitly limits any personal obligations Pride assumes to those obligations that relate to the "Subject Properties" and "Leases".  The Assignment never mentions the "prospects" or "areas of interest" defined in the Letter Agreements between Will-Drill and Wuellner-Marshall.  The Assignment's initial definitions make clear that the subject matter of the Assignments is the mineral leases listed in Exhibit A of the Assignment [Record Document 1-2, pp.32-36], not the geographical areas covered by the two Letter Agreements. Thus, when the Assignment refers to "any other contract burdening the same" it is clearly referring to obligations created by other contracts, where those obligations, real or personal, relate to the mineral leases listed in Exhibit A of the Assignment.  The language of the Assignment gives no indication that any obligations relating to the acquisition of other mineral leases within a geographic area are being assumed by the assignee.

The omission of any reference to the geographic prospects is not simply a topic on which the Assignment is silent and where parol evidence would be admissible to fill in the gaps in the writing.  The paragraph that Plaintiffs contend effects Pride/EnCana's assumption of Will-Drill's obligations relating to the acquisition of additional leases begins with the phrase: "Assignee takes the Subject Properties subject to..." [Record Document 1-2, p. 29].  This introductory phrase makes clear that the rest of the sentence specifies the obligations related to the "Subject Properties," not prospects, that Pride/EnCana agrees to assume.  Similarly, the paragraph concludes with the assignee's promise to assume a number of enumerated obligations "accruing or relating

to the owning, developing, exploring, operating or maintaining of the Subject

Properties…" Id.  These two book ends make clear that Paragraph Four specifies

obligations relating to the "Subject Properties" assigned, and not the areas of mutual

interest identified by Wuellner-Marshall and Will-Drill in their Letter Agreements.

Finally, the fact that the Assignment states explicitly that Pride is taking the

"Subject Properties" subject to Marshall-Wuellner's ORRIs confirms that the entirety of

Paragraph Four deals only with obligations attached to the "Subject Properties"

assigned. Pride and Will-Drill clearly knew how to specifically reference the ORRIs

assigned by Will-Drill to Marshall-Wuellner and therefore in the absence of any specific

reference to the personal obligation of Will-Drill, it  is implausible that Pride and Will-

Drill would have used the phrase "any other contract burdening the same" to refer to

the obligations created by the Letter Agreements between Wuellner-Marshall and Will-

Drill.[13]

In sum, because the language of the Assignment is unambiguous, the Court may

not consider any parol evidence offered by Plaintiffs to further investigate the parties'

intent.  La. Civ. Code Ann. art. 2046 (2010).  The unambiguous language of the

Assignment limits the obligations assumed by EnCana/Pride to obligations attached to

the assigned leases. Thus, the Assignment does not clearly manifest the intent to create

---

[13] Given the fact that the ORRIs created real obligations which burdened the
Leases as a matter of law and therefore the language of the contract did not need to
expressly list those obligations, it is apparent that Pride/EnCana and Will-Drill were
careful to enumerate the rights they were assuming.  This fact makes it even more
unlikely that Will-Drill and Pride/EnCana would have intended Paragraph Four to
effectuate an assumption of unspecified personal obligations.

a stipulation pour autrui through Pride/Encana's assumption of Will-Drill's obligations under the Letter Agreements.  Plaintiffs, therefore, have failed to state a claim upon which relief can be granted, since the Assignment that they have quoted and referenced in their state court petition does not, as a matter of law, effect an assumption of Will-Drill's obligation to allow them to participate in or demand an overriding royalty interest in additional leases acquired within the prospects.  For these reasons, the Court **GRANTS** EnCana's Motion for Partial Dismissal  [Record Document 21].  EnCana's Motion to Strike [Record Document 32] is **DENIED** as **MOOT**.  The Court now turns to Plaintiffs' Motion for Leave to File First Supplemental and Amended Petition.

### III.   Plaintiffs' Motion for Leave to File First Supplemental and Amended Petition [Record Document 23]

Plaintiffs seek to amend their complaint to join SWEPI LP and Pride Oil & Gas Properties, Inc. as defendants.  [Record Document 23, p.1].  As EnCana consents to Plaintiffs' motion to join SWEPI LP, the Court **GRANTS** this part of the motion to the extent that Plaintiffs demand an accounting, recognition, and damages related to the ORRIs from SWEPI LP in the leases actually assigned by Will-Drill to Pride (listed in Exhibit "A" to the Assignment).  Id. at 2-4.  The Court **DENIES** Plaintiffs' motion to amend their complaint to add claims grounded in SWEPI's failure to allow Plaintiffs to participate in additional leases taken within the prospect areas for the reasons stated in Section II supra.

Page 24

Plaintiffs' attempt to join Pride is troubling as it would divest this Court of diversity jurisdiction.  Id.  Plaintiffs make the following four claims against Pride:

1)   that they have "failed to provide for Plaintiffs' participation" in leases obtained in the two prospects, whether those leases were obtained by Pride or EnCana;

2)   that "Pride [Oil] as the agent for a partially disclosed principal, now known as EnCana, has not properly recognized and/or paid Plaintiffs for their respective ORRIs in and to the Leases";

3)   that "to the extent that Pride failed to notify EnCana of Plaintiffs' respective ORRIs in and to the Leases and Plaintiffs' entitlement to participate in the Additional Leases in the Gahagan Prospect and the Martin Prospect[14], Pride is liable to Plaintiffs for damages"; and

4)   that "[t]o the extent that... Pride failed to notify SWEPI of Plaintiffs' respective ORRIs in and to the Leases and Plaintiffs' entitlement to participate in the Additional Leases in the Gahagan Prospect and the Martin Prospect... Pride is liable to Plaintiffs for damages."  [Record Document 23-1, pp.2-3].

This Court has discretion to either permit Plaintiffs to add Pride and remand the case or to deny joinder and retain jurisdiction.  28 U.S.C. § 1447(e) (2011) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject

_____

[14]The "Gahagan Prospect" and the "Martin Prospect" are the names sometimes used to describe the prospect areas defined in the Letter Agreements.

matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.").

In <u>Hensgens v. Deere & Co.</u>, the Fifth Circuit laid out the following four factors that should guide district courts in balancing the original defendant's interest in maintaining a federal forum against the interest in avoiding parallel lawsuits: "1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; 2) whether plaintiff has been dilatory in asking for amendment; 3) whether plaintiff will be significantly injured if amendment is not allowed; and 4) any other factors bearing on the equities."  833 F.2d 1179, 1182 (5th Cir. 1987).  In <u>Cobb v. Delta Exports, Inc.</u>, the Fifth Circuit further explained that in considering a motion to join a non-diverse dispensable party a district court would properly deny joinder if "there is no colorable claim against the party the plaintiff seeks to join".  186 F.3d 675, 678 (5th 1999).  The Court must, then, carefully examine the nature of Plaintiffs' claims against Pride, the effect a remand will have on the parties, and any other factors bearing on the equities in order to balance Defendant's interest in maintaining a federal forum with Plaintiffs' interest in prosecuting all of their claims in a single suit.  <u>Hensgens</u>, 833 F.2d at 1182 ("The district court, when faced with an amended pleading naming a new non-diverse defendant in a removed case, should scrutinize that amendment more closely than an ordinary amendment.").

**A.    Are Plaintiffs' Claims against Pride Colorable?**

The question of whether Plaintiffs' claims against Pride are colorable informs the Court's application of the <u>Hensgens</u> balancing test.  <u>See</u> <u>Wilson v. Bruk-Klockner, Inc.</u>, 602 F.3d 363, 366-68 (5th Cir. 2010).  For the reasons given in Section II <u>supra</u>, the Court finds that any claims against Pride or EnCana grounded in the alleged right of Plaintiffs to demand participation in any additional leases acquired within the two prospect areas fail to state a cause of action upon which relief can be granted. Plaintiffs' claims that Pride failed to allow them to participate in additional leases and failed to notify EnCana of Plaintiffs' right to participate in additional leases are therefore not colorable because Plaintiffs have no right to participate in additional leases.  In addition, the Court is persuaded that none of Plaintiffs' claims against Pride, whether grounded in Plaintiffs' alleged "right to participate" or in Pride's failure to pay Plaintiffs' overriding royalty interests, are colorable for the reasons explained below. Each of Plaintiffs' four claims against Pride will be addressed in turn.

Plaintiffs' first two claims against Pride, which mirror their claims against Encana, seek to hold Pride liable for Encana's alleged obligations to Plaintiffs under the theory that at the time of the transaction between Pride and Will-Drill, Pride was acting on behalf of an undisclosed principle.  [Record Document 31 pp. 8-9]. Therefore, Plaintiffs conclude, Pride is bound by the same obligations it assumed on behalf of EnCana.  This theory of liability, however, must contend with the language of Louisiana Civil Code Article 3018, which reads:

> A mandatary who enters into a contract and discloses his status as a mandatary, though not his principal, binds himself personally for the performance of the contract. The mandatary ceases to be bound when the principal is disclosed.

La. Civ. Code Ann. art. 3018 (2010).

This language would seem to clearly relieve Pride of any liability it had incurred under the Assignment as soon as it disclosed the identity of EnCana, its principle, which it did on or before October 12, 2005.  [Record Document 29-1, p.23].[15]  Plaintiffs contend, however, that Article 3018 must be interpreted to ensure that an "after the fact" disclosure by a mandatary of their principal does not relieve the mandatary of liability for the principal's obligations.  [Record Document 31, p.9].  Plaintiffs argue that this interpretation is necessary in order to avoid a reading of Article 3018 that "would allow the agent/mandatary to escape liability in every single instance by an after the fact ineffective disclosure of the principal's identity."  Id.

The Court has found no Louisiana jurisprudence interpreting Article 3018. Professors Wendell H. Holmes and Symeon C. Symeonides, however, appear to share Plaintiffs' worries concerning Article 3018.  They worry that Article 3018 encourages opportunistic behavior on the part of the partially disclosed mandatary, enabling him to keep the benefits of lucrative contracts for himself while unloading the burdens of unfortunate contracts onto the shoulders of his unlucky principal by strategically choosing to either disclose or to not disclose.  Wendell H. Holmes & Symeon C. Symeonides, Representation, Mandate, and Agency: A Kommentar on Louisiana's New

---

[15] Plaintiffs do not dispute that at least by October 12, 2005 Pride had disclosed the identity of its principal.  [Record Document 31, p.11].

Law, 73 TUL. L. REV. 1087, 1142-46 (1999).  As Defendants point out, however, although Professor Holmes doubts the wisdom of Article 3018 from the perspective of sound policy, he understands it to mean what it says.  [Record Document 29, p.8].  In the Louisiana Civil Law Treatise  Professor Wendell H. Holmes, this time writing with Professor Glenn G. Morris, opines that Article 3018 eliminates virtually all risk for a mandatary with a partially disclosed principal since the mandatary "need only disclose the identity of his principal, after the fact, to avoid liability."  8 La. Civ. Law. Treat. § 33.05 (2010).[16]  Thus, the scholarly commentary on Article 3018 agrees with Defendants that a mandatary for a partially disclosed principal may escape liability by disclosing the identity of his principal after the fact, though it questions the wisdom of this rule.

Plaintiffs also argue that the comments to Article 3018 evince no intent on the part of the legislature to alter the jurisprudence. However, if the plain language of a legislative enactment does in fact alter the jurisprudence, there is no additional need for the legislature to state that it intends to change the jurisprudence.  In fact, the Louisiana Civil Code precludes further investigation into the intent of the legislature if the text is clear and unambiguous and does not lead to absurd consequences.  La. Civ. Code Ann. art. 9 (2010).  The text of the article clearly is not amenable to Plaintiffs'

---

[16] Of course, this statement does not take into account any limitations on when new evidence may be introduced into litigation imposed by the applicable rules of civil procedure.

reading, and although there may be doubts as to the wisdom of the policy it enacts, the Court is not persuaded that the consequences rise to the level of absurdity.

Furthermore, Plaintiffs' reading of Article 3018 is vulnerable to attack through reductio ad absurdum.  Article 3018 clearly contemplates a situation where a partially disclosed mandatary is held liable for the period of time before he discloses his principal.  If the Court were to hold that disclosure after the transaction through which the partially disclosed mandatary incurred liability did not eliminate liability for the mandatary, then the scenario contemplated by Article 3018 could never occur.  If "after the fact" disclosure never relieved a mandatary of liability, in order for a partially disclosed mandatary to ever be relieved of liability, the liability relieving act would have to take place before the liability imposing act, which is impossible.  Article 3018 would then be effectively read out of the Civil Code.

In summary, the unambiguous language of Article 3018, the weight of the persuasive authority, and the maxim that legislation must be interpreted in order to give meaning to the legislative text point the Court to the unavoidable conclusion that Plaintiffs' first two claims against Pride are not colorable.  By disclosing the identity of its principal, Pride relieved itself of any liability it incurred from the Assignment.

Neither are Plaintiffs' claims stemming from the alleged failure of Pride to notify EnCana and SWEPI, that is, claims 3 and 4, colorable.  The legal basis of the "failure to notify" claims is not clear from the proposed amended complaint and Plaintiffs' Reply

does not shed any more light on this point.[17]  Plaintiffs have failed show how a duty to notify is imposed on Pride by contract,  jurisprudence, or statute.   Plaintiffs have also failed to show how a right of action in favor of Plaintiffs lies in the event Pride failed to notify either EnCana or SWEPI of obligations, real or personal, relating to the leases or prospects in question.[18]  The Court has not been able to find any contractual, statutory, or jurisprudential source for Pride's alleged duty to notify.  Accordingly, the Court finds that Plaintiffs' notification claims are not colorable.

### B.    Application of the Hensgens Factors

The Court has no direct evidence that the purpose of Plaintiffs' motion to amend is to destroy the Courts' diversity jurisdiction. Accordingly, the first <u>Hensgens</u> factor is neutral.  While Plaintiffs filed their motion to add Pride after EnCana had filed a potentially dispositive motion and after substantial activity beyond the pleading stage had occurred in this case, the motion was filed within the deadline to amend their claim and join parties.  The second <u>Hensgens</u> factor is therefore also neutral.

_____

[17] On this point, Plaintiffs' Reply states the following: "evidence at trial will confirm that Pride reviewed the Letter Agreements prior to entering into the Will Drill-Pride/EnCana Assignment and, accordingly, to the extent that Pride failed to notify EnCana of Plaintiffs' respective ORRIs in and to the Leases and Plaintiffs' entitlement to participate in the Additional Leases, Pride is liable to Plaintiffs for damages." [Record Document 31, p.7].

[18] Assuming a contract between Pride and EnCana or SWEPI imposed an obligation on Pride to notify EnCana or SWEPI of Plaintiffs' rights, it appears that EnCana and/or SWEPI would have a right of action against Pride in the event Pride breached the notification term.  But, in the absence of a stipulation pour autrui, Plaintiffs would not have a right of action under the contract.  Plaintiffs have not plead any contractual source of the alleged obligation to notify.

The third <u>Hensgens</u> factor, however, weighs heavily against Plaintiffs.  The fact that none of Plaintiffs' claims against Pride are colorable compels the Court to conclude that Plaintiffs are not significantly injured by remaining in Federal Court.  For this reason and because the joinder of Pride would destroy the Court's diversity jurisdiction, the Court **DENIES** Plaintiffs' Motion for Leave to File 1st Supplemental & Amended Petition [Record Document 23] to the extent that it seeks to join Pride as a Defendant.

## IV.    Conclusion

For the reasons given above, the Court makes the following rulings:

1)     Plaintiffs' Motion for Leave to File 1st Supplemental & Amended Petition [Record Document 23] to the extent that it seeks to join Pride as a Defendant is **DENIED**;

2)     Plaintiffs' Motion for Leave to File 1st Supplemental & Amended Petition [Record Document 23] is **GRANTED** to the extent that Plaintiffs demand from SWEPI LP an accounting, recognition, and damages related to the ORRIs held by Plaintiffs in those leases assigned by Will-Drill Resources, Inc. to Pride Oil and listed in Exhibit "A" to that assignment document dated August 25, 2005 [Record Document 1-2, at p. 28];

3)     Plaintiffs' Motion for Leave to File 1st Supplemental & Amended Petition [Record Document 23] is **DENIED** to the extent Plaintiffs seek to add claims grounded in SWEPI LP's failure to allow Plaintiffs to receive an ORRIs in any lease not specifically assigned by Will-Drill Resources, Inc. to

Pride Oil and listed in Exhibit "A" to that assignment document dated
August 25, 2005 [Record Document 1-2, at p. 28] within the prospect
areas;

4)   EnCana's Motion for Partial Dismissal [Record Document 21] is **GRANTED**
dismissing with prejudice all claims made by Plaintiffs premised on
Defendant's  failure to allow Plaintiffs to participate in or receive an ORRIs
in any lease not specifically assigned by Will-Drill Resources, Inc. to Pride
Oil and listed in Exhibit "A" to that assignment document dated August 25,
2005 [Record Document 1-2, at p. 28] within the prospect areas;

5)   EnCana's Motion to Strike [Record Document 32] is **DENIED AS MOOT**.

**A Judgment of the Court will follow.**

March 12, 2012 in Shreveport, Louisiana

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE