# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

WUELLNER OIL & GAS, INC., ET AL              CIVIL ACTION NO. 10-cv-01686

VERSUS                                       JUDGE ELIZABETH ERNY FOOTE

ENCANA OIL & GAS (USA) INC.,
MARSHALL OIL & GAS, INC.,
TEXAS GAS DEVELOPMENT, L.P.,
And JARRATT ENTERPRISES, L.L.C.             MAGISTRATE JUDGE MARK HORNSBY

## MEMORANDUM OPINION

Plaintiffs, Wuellner Oil & Gas, Inc.,  Marshall Oil & Gas, Inc., Texas Gas

Development, L.P., and Jarratt Enterprises L.L.C. (collectively "Plaintiffs"), claim that

Defendants EnCana Oil & Gas (USA) Inc.'s ("EnCana") and SEWPI LP ("SWEPI")

breached obligations owed to them by failing to assign overriding royalty interests in

certain mineral leases taken by EnCana. The leases at issue in the instant motions are

those that were taken by EnCana to replace expired leases that had been obtained

previously by EnCana from Will-Drill on the same acreage (the "replacement leases").

Before the Court is a motion by Defendants for partial summary judgment [Record

Document 58-1] and a motion by Plaintiffs for summary judgment [Record Document

62].  Defendants argue that Plaintiffs' claim for royalties on the replacement leases

must be dismissed because Defendants did not agree to assume any personal obligation

to assign an overriding royalty interest to Plaintiffs in the replacement leases. Plaintiffs

argue that EnCana did assume an obligation to assign Plaintiffs an overriding royalty interest in the replacement leases. Oral argument was held on these motions on November 15, 2012 at 1:30 p.m. in open court.  For the reasons stated herein, the Court **GRANTS** Defendants' Motion for Partial Summary Judgment [Record Document 58] and **DENIES** Plaintiffs' Motion for Summary Judgment [Record Document 62].

## I.    Factual and Procedural Background

A detailed factual background of this case has already been given in the Court's previous Memorandum Opinion [Record Document 48, pp. 2-6]. A few details must be repeated here in order to provide context for these two motions. Plaintiffs originally asserted two claims in this suit.  First, Plaintiffs sought from EnCana an accounting, damages, and payment of overriding mineral royalty interests that were carved out of mineral leases which were specifically identified in an exhibit to an assignment between Will-Drill and EnCana's predecessor-in-interest (the "Assignment").[1] It is undisputed that EnCana received these leases through the Assignment and that EnCana agreed in the Assignment to pay Plaintiffs certain overriding royalty interests ("ORRIs") previously granted by Will-Drill to Plaintiffs' predecessor-in-interest. This claim was not at issue in the previous motion to dismiss, and it is not at issue in the present motions.

---

[1]Pride Oil acted as EnCana's agent in the assignment with Will-Drill. [Record Document 48, p.5]. After receiving the leases from Will-Drill, Pride Oil assigned them to EnCana. Id. This agency relationship has no bearing on the instant motions. In the interest of brevity, the Court will treat this assignment as if EnCana entered into it directly.

Second, relying on two letter agreements between Plaintiffs' predecessor-in-interest and Will-Drill (the "Letter Agreements") Plaintiffs sought recognition of their alleged right to participate in all leases taken by or assigned to Defendants within specific geographic areas defined in the Letter Agreements (the "Prospect Areas").[2] In an earlier Memorandum Opinion, the Court granted Defendants' motion to dismiss this second claim to the extent that it demanded overriding royalties on leases taken by EnCana on acreage outside of the acreage covered by the leases specifically assigned to EnCana.  [Record Document 48].[3]

Plaintiffs subsequently amended their complaint to add a claim seeking recognition of their alleged right to receive ORRIs in all "extensions, renewals, and/or replacements" of the leases specified in Exhibit "A" of the Assignment. [Record Document 52, p.2]. Plaintiffs cite no extension-or-renewal clauses contained in the assigned leases or the ORRIs, relying instead on their alleged rights under the Letter Agreements. [Record Document 63, pp.3-4] ("While Defendants argue an asserted lack

_____

[2]The First Letter Agreement is dated November 1, 2003.  [Record Document 1-2, p.8].  The second is dated November 25, 2003.  Id. at 13.  The terms of the Letter Agreements are identical.  In the interest of brevity, discussion of the provisions of the Letter Agreements will only cite to the November 1, 2003 Letter Agreement.

[3]Plaintiffs subsequently amended their pleading to add SWEPI as a defendant and to add a claim for ORRIs on the replacement leases taken by EnCana.  SWEPI now holds a fifty-percent (50%) interest in the leases at issue in this case by virtue of an assignment from EnCana.

of 'anti-washout' provisions, the proper determination again involves this Court's evaluation of Defendants' assumption of obligations pursuant to the Letter Agreements."). Defendants now move for summary judgment on Plaintiffs' claims for ORRIs on these replacement leases.

## II.   The Contentions of the Parties

Defendants first argue that there is no "extension and renewal" clause applicable to the ORRIs carved out of the assigned leases. Plaintiffs admit that there is no "extension and renewal" clause per se in the documents granting an overriding royalty interests, but they argue that Will-Drill's personal obligation to assign an overriding royalty interest in any new leases taken within the Prospect Areas — an obligation created by the Letter Agreements between Will-Drill and Plaintiffs' predecessor-in-interest — was assumed by Defendants in the Assignment. The Letter Agreements read in pertinent part:

> It is agreed and understood that M-W shall receive an assignment of overriding royalty from Will-Drill equal to the difference, if any, between twenty-five percent (25%) and lease burdens, but in no case greater than two percent (2%) on any lease acquired by Will-DRill within the Contract Area.

> [Record Document 1-2, p.9].

The term of Will-Drill's obligation to assign to Plaintiffs' predecessor-in-interest is defined in the Letter Agreements as "the primary term of any oil and gas lease acquired by Will-Drill within the Contract Area and for two additional years thereafter." [Record Document 1-2, p. 9].

The crux of the instant motions is whether the language of the Assignment supports the Plaintiffs' position. Before turning to the language of the Assignment, it is necessary to address Defendants' threshold argument that the Court has already decided this issue. Defendants argue that the Court has already held that Defendants assumed no personal obligations contained in the Letter Agreement through the Assignment, citing the following language from the Court's previous Memorandum Opinion and Order:

> The unambiguous language of the Assignment limits the obligations assumed by EnCana/Pride to obligations attached to the assigned leases. Thus, the Assignment does not clearly manifest the intent to create a stipulation pour autrui through Pride/EnCana's assumption of Will-Drill's obligations under the Letter Agreements.
>
> ...
>
> [The Assignment] does not, as a matter of law, effect an assumption of Will-Drill's obligation to allow [Plaintiffs] to participate in or demand an overriding royalty interest in additional leases acquired within the prospects.
>
> [Record Document 48, pp. 21-23].
>
> IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File First Supplemental & Amended Petition... is DENIED to the extent Plaintiffs seek to add claims premised on Defendant's failure to allow Plaintiffs to participate in or receive an overriding royalty interest in any leases not specifically assigned by Will-Drill Resources, Inc. To Pride Oil and listed in Exhibit "A" to that assignment document dated August 25, 2005...
>
> [Record Document 49, p. 2].

The decision of the Memorandum Opinion has now become final. [Record Document 49]. Defendants argue that the Court's decision forecloses Plaintiff's argument that EnCana assumed the obligation to assign ORRIs in replacement leases. The Court

acknowledges that some portions of the language quoted by Defendants contain a broader rationale for the Court's ruling than others. At times the Court appears to hold that EnCana did not intend to assume any personal obligations of Will-Drill. At other times the Court appears to rely on the narrower rationale that the Assignment unambiguously evidences no intent to assume any personal obligations unrelated to the assigned leases. The analysis conducted by the Court shows that the narrower holding is the correct one. In reading the Assignment, the Court emphasizes that the subject matter of the Assignment was the "Subject Properties" and "Leases" rather than the geographic areas defined in the Letter Agreements.  [Record Document 48, pp. 20-23] ("These two book-ends make clear that Paragraph Four specifies obligations relating to the 'Subject Properties' assigned, and not the areas of mutual interest identified by Wuellner-Marshall and Will-Drill in their Letter Agreements.").  This reading also comports with the general practice of reading opinions with multiple rationales for the narrowest holding that supports the decision. Garland v. Roy, 615 F.3d 391, 399 (5th Cir. 2010). Plaintiffs have a colorable argument that the obligation to assign ORRIs on replacement leases is "related to" the leases replaced. Therefore the Court will address in this opinion whether this obligation falls within the field of obligations EnCana assumed.[4]

Plaintiffs likewise argue that the Court has already decided this issue in their favor. They contend that the Court has already found that Defendants did assume Will-

_____

[4]In any event, the Court arrives at the same outcome that would be reached if the Defendants' broader reading of the Memorandum Opinion were adopted.

Drill's obligations with regard to the assigned leases. This argument is without merit. The Memorandum Opinion makes clear that the Court only assumed for the sake of argument, and did not decide, that EnCana assumed some personal obligations of Will-Drill. [Record Document 48, p.21]. Furthermore, that EnCana did not assume any obligations unrelated to the attached leases does not logically entail that EnCana did assume obligations related to the attached leases.

### III.   Assumption of the Obligation to Assign ORRIs on Replacement Leases

The question before the Court is whether Will-Drill's promise in the Letter Agreements to Plaintiffs' predecessor-in-interest to assign an ORRI on any replacement leases taken within the Prospect Areas binds the Defendants, EnCana and SWEPI.

#### A.   The Law

An overriding royalty interest is carved out of a mineral lease; its continued existence therefore depends on the continued existence of the underlying mineral lease. Wier v. Glassell, 44 So.2d 882, 887-88 (La. 1950).  Parties may contractually agree, through what is typically called an "extension-and-renewal clause," that an overriding royalty interest will survive the expiration of the underlying lease and will burden any future lease obtained by the lessee that covers the same property.  Otter Oil Co. v. Exxon Co., U.S.A., 834 F.2d 531, 533 (5th Cir. 1987).  In Berman v. Brown, the Louisiana Supreme Court ruled that an extension-and-renewal clause imposes only personal obligations. 70 So.2d 443, 446-47 (La. 1953). In order for such a clause to be

effective against a third party who acquires the underlying lease, that third party must agree to stand in the shoes of the lessee and assume the lessee's obligation under the clause.  Id. at 447.[5]

The Letter Agreements are between Plaintiffs' predecessor-in-interest and Will-Drill. The Assignment is between Will-Drill and EnCana. Thus, the Court looks to the law governing assumption of obligations and stipulations pour autrui to determine whether EnCana is bound by Will-Drill's promises in the Letter Agreements. The Louisiana Civil Code provides that "[a]n obligor and a third person may agree to an assumption by the

---

[5]Defendants candidly bring Robinson v. North American Royalties, Inc., to the Court's attention.  463 So.2d 1384 (La. App. 1985).  The Robinson Court held that La. Min. Code art. 128 overrules Berman to the extent that it creates statutory privity of contract between a lessor (or as in Robinson, a lessee/sublessor) and a sublessee (or sublessee once-removed) to the extent of the interest acquired by the sublessee (or sublessee once-removed). Id. at 1387-89.  Robinson is distinguishable in a number of respects from the instant case. In Robinson, the party who sought to enforce the extension and renewal clause was also the lessee-sublessor, arguably bringing him within the scope of the term "lessor" as used in La. Min. Code art. 128.  Robinson, 463 So.2d at 1385. In the instant case, the Plaintiffs are neither lessors nor sublessors, but only the holders of overriding royalty interests.  Also, in Robinson the sublessee-once-removed agreed to take the mineral rights "subject to such interest's proportionate part of all overriding royalties... and agreements of record." Id. The extension and renewal clause was contained in the recorded sublease that granted the overriding interest to the lessee-sublessor. Id. It is unclear from the Robinson opinion whether Mineral Code art. 128 would have required the sublessee-once-removed to honor the obligation imposed by the extension and renewal clause absent the agreement to assume it. This Court, being a federal court sitting in diversity, shares the Fifth Circuit's reluctance to extend Robinson beyond its precise holding. Chevron U.S.A., Inc. v. Traillor Oil Co., 987 F.2d 1138, 1158 (5th Cir. 1993) ("Assuming that Robinson represents a correct statement of Louisiana law, it does not aid Chevron. Chevron is not a lessee-sublessor, but a lessee-assignor... we are not prepared to say—as a federal court sitting in diversity—that it creates statutory privity between all successors in interest to an oil and gas lease").

latter of an obligation of the former." La. Civ. Code Ann. art. 1821 (2010).[6]  If the obligee wishes to enforce the obligation against the third person, then the agreement to assume the obligation must have been made in writing. Id.  An assumption by a third person of an obligation the other contracting party owes to an obligee may also be a stipulation pour autrui. Whittington v. Louisiana-Pacific Corp., 385 So.2d 863, 865 (La. Ct. App. 1980).  If the alleged assumption is also a stipulation pour autrui, then in addition to the articles and jurisprudence governing assumption of obligations, the Court also consults the criteria used to determine whether an stipulation pour autrui exists in order to determine whether the obligation in question has been assumed.  See Davis Oil Co. v. TS, Inc., 145 F.3d 305, 310-313 (5th Cir. 1998).

For the reasons given in the Court's previous ruling, the Court will apply the following method to address whether parole evidence is admissible in the interpretation of the Assignment.  [Record Document 48, pp. 11-19].  The Court must first determine whether any ambiguity exists in the language of the written Assignment regarding whether EnCana assumed Will-Drill's obligations to assign an override on replacement leases.  If ambiguity does exist, then parol evidence may be necessary in order for the Court to determine the common intent of the parties on this question.  However, once it has been determined what evidence is admissible to interpret the terms of the contract, Plaintiffs have the heightened burden of showing that the contract, as evidenced by the

---

[6]The Articles governing assumption of obligations and stipulations pour autrui use the terms "third party" and "third person" to refer to different entities.  In this paragraph, the Court uses the term "third person" to refer to the party assuming the obligation.

appropriate materials, "clearly manifests" the parties' intent to create a stipulation pour autrui.

Summary Judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure if the movant shows that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In Louisiana, the determination of whether the language in a written contract is ambiguous is a question of law.  Preston Law Firm, L.L.C. v. Mariner Health Care Mgmt. Co., 622 F.3d 384, 391-92 (5th Cir. 2010).  When a contract can be construed from within its four corners, the question of contractual interpretation is answered as a matter of law. Wooley v. Lucksinger, 61 So.3d 507, 558 (La. 2011.). Once a written document is found to be ambiguous, "the determination of the parties' intent through extrinsic evidence is a question of fact." Prescott v. Northlake Christian Sch., 369 F.3d 491, 495 (5th Cir. 2004).

## B.    Analysis

The Letter Agreements between Will-Drill and Plaintiff's predecessor-in-interest provide that Plaintiffs "shall receive an assignment of overriding royalty from Will-Drill... on any lease acquired by Will-Drill within the Contract Area."  [Record Document 1-2, p. 9].  As noted in the Court's previous ruling, the Assignment between Will-Drill and EnCana begins by defining the term "Subject Properties" as the leases and wells that are being assigned:

> Assignor... does hereby grant... unto Assignee all of Assignor's right, title, and
> interest in the oil, gas and mineral leases described on Exhibit A (the "Leases")

and wells located thereon or on lands pooled, unitized or communitized therewith as also described on Exhibit A (the "Wells"). The Leases and Wells may be hereafter referred to as the "Subject Properties."

[Record Document 1-2, p.29].

Paragraph Four of the Assignment then addresses the obligations related to these

"Subject Properties" that Pride agrees to assume:

Assignee [Pride] takes the Subject Properties subject to and agrees to faithfully and timely perform the terms, conditions and provisions of the Leases and any other contract burdening the same including specifically, but not limited to

a)    the certain Farmout Agreement dated September 1, 2004, by and between Marathon Oil Company, as Farmor, and Will-Drill Resources, Inc., as Farmee, and

b)    those certain Assignments of Overriding Royalty Interest from Will-Drill Resources, Inc., as Assignor to Marshall-Wuellner, Inc., as Assignee, executed on August 22, 2005...

Assignee assumes and agrees to pay, perform, fulfill and discharge all claims, costs, expenses, liabilities and obligations accruing or relating to the owning, developing, exploring, operating or maintaining of the Subject Properties after the Effective Date, including specifically, but without limitation, the obligation to legally plug and abandon any well listed on Exhibit A.

Id.

The issue is whether the obligation to assign an ORRI to Plaintiffs on any replacement

lease is part of an "other contract burdening the [Subject Properties]."  Article 2047 of

the Louisiana Civil Code provides:

The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter.

La. Civ. Code art. 2047.

The word "burden" is typically used in the context of property rights in connection with real obligations. Real obligations are obligations that run with a real property right and bind subsequent holders of that right regardless of whether they agree to assume them.  See e.g. La. Civ. Code art. 1764 comments (b) and (c) (discussing real rights "burdened" by servitudes). As noted above, the Louisiana Supreme Court has held that an overriding royalty interest, being a real right, burdens the lease out of which it is carved but not the minerals leased.  Wier, 44 So.2d at 887-88. An extension and renewal clause, creating only a personal obligation, however, binds only the parties that agree to the clause. Berman, 70 So.2d at 446-47. The obligation to assign an ORRI for any lease taken by Will-Drill within the prospect areas, an obligation broader than a simply extension-and-renewal clause, is also a personal obligation that burdens only Will-Drill. [Record Document 48, pp. 9-10]. It would thus be incorrect to say that an obligation to assign an ORRI "burdens" a lease in the technical sense of the word.

The inclusion of the farmout agreement in paragraph four as an example of the type of obligations assumed by EnCana, however, counsels against adopting an interpretation focused completely on the technical meaning of the word "burden."  A farmout agreement is "an agreement by one who owns drilling rights to assign all or a portion of those rights to another in return for drilling and testing on the property." John S. Lowe, Analyzing Oil and Gas Farmout Agreements, 41 S.W. L.J. 762, 763 (1988); Patrick H. Martin & Bruce M. Kramer, William & Meyers Oil and Gas Law § 432 (abridged 3d. ed. 2007). If the farmout agreement referred to in the Assignment were

Page 12

structured as a promise by Will-Drill to assign, then it would clearly be a personal obligation under Louisiana law and would not "burden" the Subject Properties in the technical sense.  Pinnacle Operating Co., Inc. v. Ettco Enterprises, Inc., 914 So.2d 1144, 1150 (La. App. 2005) (holding that the obligation to make assignments, created by a farmout agreement, was personal in nature and thus in order to bind a third party it must be expressly assumed by that third party), Terrebonne Parish School Bd. v. Mobile Oil Co., 310 F.3d 870, 888 (5th Cir. 2002) (under Louisiana law a farm-out agreement is a contract subject to a suspensive condition and there is no obligation to execute an assignment until the suspensive condition occurs). The farmout agreement referenced in the Assignment is not before the Court.  Accordingly, the Court cannot be absolutely certain that it creates only a personal obligation to assign a mineral interest. Its inclusion in the Assignment does, however, counsel against an overly technical interpretation of the word "burden."

Nevertheless, the Court is convinced that parol evidence is unnecessary because the Assignment does not manifest any intent on the part of EnCana to assume Will-Drill's obligation to assign ORRIs on replacement leases. The meaning of the phrase "any other contract burdening the [Subject Properties]" can be determined from within the four corners of the Assignment by examining the nature of the specific agreements that are said to burden the assigned leases. In the interpretation of contracts, "the specific controls the general." La. Civ. Code Ann. art. 2051 ("Although a contract is worded in general terms, it must be interpreted to cover only those things it appears

the parties intended to include."); Corbello v. Iowa Production, 850 So.2d 686, 704 (La. 2003) clarified on rehearing on other grounds, 850 So.2d 686 02–826 (La. 2003). Under the generally accepted meaning of the term "farmout agreement," the farmout agreement with Marathon Oil would contemplate the assignment of some interest in the leases held by Will-Drill to Marathon Oil when Marathon Oil performs its obligations under the farmout agreement. The obligations created by the farmout thus "burden" the specific leases that are under the farmout agreement to the extent that they provide that some interest in those leases shall be assigned to Marathon Oil in the future if Marathon performs as promised. The farmout agreement contemplates that the parties' interests in the leases will change upon the occurrence of the suspensive condition. Thus, the phrase "other contract burdening the [Subject Properties]" is broad enough to include an obligation to transfer an interest in the Subject Properties.

None of the leases assigned in the Assignment are "burdened," in this sense, by Will-Drill's obligation under the Letter Agreements to assign an ORRI to Plaintiffs for any replacement lease taken within the Prospect Areas.  Will-Drill's continuing obligation under the Letter Agreements with regard to leases it might take in the future does not burden the leases taken in the past, even if those leases cover the same acreage. The obligation to assign ORRIs in the future does not contemplate that any interest in the leases taken in the past will change. Nor does the obligation "burden" the assigned leases under any the generally understood meaning of the term "burden," since this obligation has no connection at all with the assigned leases.  La. Civ. Code Ann. art.

2047. ("The words of a contract must be given their generally prevailing meaning.").

Will-Drill's obligation with regard to replacement leases thus does not "burden" the

original leases even under the broadest interpretation the term "burden" will support.

Thus, Will-Drill's obligation was not assumed by EnCana.  Defendants' Motion for Partial

Summary Judgment is therefore **GRANTED**, and Plaintiffs' Motion for Summary

Judgment is **DENIED**.

## IV.     Conclusion

For the reasons given above, the Court makes the following rulings:

1)     the Court **GRANTS** Defendants' Motion for Partial Summary Judgment

[Record Document 58];

2)     and the Court **DENIES** Plaintiffs' Motion for Summary Judgment [Record

Document 62].

Signed this 26th day of March, 2013.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE